UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 2:07-cr-00677-01 |
| | : | |
| MICHAEL DEL BUONO | : | |

**O P I N I O N**
**Defendant's Motion for Early Termination of Supervised Release, ECF No. 312 – Denied**

**Joseph F. Leeson, Jr.**                                                                **January 27, 2026**
**United States District Judge**

**I.    Introduction**

Michael Del Buono is currently serving a 6-year term of supervised release, which is expected to expire in October of 2030. He seeks early termination of that remaining period of time due to his good behavior and compliance. The Government opposes his request. For the reasons stated below, the Court will deny the Motion.

**II.   Background**

In October of 2007, Del Buono was charged via a grand jury indictment for several drug trafficking crimes, including conspiracy to distribute heroin, in violation of 21 U.S.C. § 846, distribution of heroin, in violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute heroin, in violation of 21 U.S.C. § 841, and aiding and abetting, in violation of 18 U.S.C. § 2. *See* Indictment, ECF No. 28. On March 31, 2008, Del Buono entered an open guilty plea to all charges. *See* ECF No. 93. On August 14, 2008, he was sentenced within the guideline range to a term of 230 months imprisonment, to be followed by six years of supervised release. *See* Judgment, ECF No. 147. Del Buono appealed his sentence, *see* ECF No. 150, but the Court of Appeals for the Third Circuit affirmed the same, *see* ECF No. 184. After 158 months in custody,

Del Buono was transferred to home confinement due to COVID-19 concerns, where he served the remaining 46 months of his sentence, after good time was applied. *See* Motion for Early Termination of Supervised Release ("Motion") ¶¶ 4-5, ECF No. 312. Del Buono's term of supervised release began on October 16, 2024, and is set to expire on October 15, 2030. *See* Resp. 3, ECF No. 314.

Del Buono has three prior felony drug convictions, and is considered a "career offender." *Id.* at 2. Since the mid-90s, Del Buono has had a long, storied history with possession and distribution of controlled substances. On at least four occasions he pled guilty to possession with intent to distribute heroin.[1] Del Buono's other sentences were imposed consecutively to the sentence imposed in this case. *See* Motion at ¶¶ 1-4.

On January 6, 2026, Del Buono filed the instant Motion for Early Termination of Supervised Release, in which he argues that (i) his lengthy sentence has sufficiently deterred him from future criminal conduct, protected the public from his crimes, and provided him with correctional treatment, and that (ii) his compliance with court requirements and full payment of fines and fees demonstrates good behavior. *See* Motion. On January 20, 2026, the Government responded in opposition, arguing that Del Buono has not met his burden to demonstrate that termination of supervised release is warranted, because he has not shown a change in circumstances beyond his mere compliance. *See* Resp. On January 22, 2026, Del Buono replied, asserting that he has demonstrated "perfect" compliance for five years, and that early termination serves "the interests of justice" because he is a rehabilitated individual, he poses no risk to the public, has maintained gainful employment, has had zero positive drug tests, and has paid all

---

[1] This information was taken from the pre-sentencing memoranda. *See generally* ECF Nos. 117, 143-45.

fines and court costs, so his continued supervision would have no effect on his future deterrence. *See* Reply. The Court is now ready to decide the Motion.

**III.     Standard of Review – Early Termination of Supervised Release**

After a defendant has served at least one year of supervised release, a district court has the discretion to terminate the remainder of the term "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). The court's level of discretion is "considerable." *United States v. Fattah*, No. 23-1064, 2023 WL 4615300, at *2 (3d Cir. July 19, 2023) (citing *United States v. Sheppard*, 17 F.4th 449, 457 (3d Cir. 2021)). In weighing such a request, § 3583(e) directs the court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," *see* 18 U.S.C. § 3553(a)(1), the need to "afford adequate deterrence to criminal conduct," to "protect the public from further crimes of the defendant," and to "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," *see* § 3553(a)(2)(B)-(D), the sentencing guidelines and any pertinent policy statements from the United States Sentencing Commission, *see* § 3553(a)(4)-(5), "the need to avoid unwarranted sentence disparities," *see* § 3553(a)(6), and "the need to provide restitution to any victims of the offense," *see* § 3553(a)(7). "District courts are not required to make specific findings of fact with respect to each of these factors; rather, 'a statement that [the district court] has considered the statutory factors is sufficient.'" *United States v. Melvin*, 978 F.3d 49, 52-53 (3d Cir. 2020) (quoting *United States v. Gammarano*, 321 F.3d 311, 315–16 (2d Cir. 2003)).

Effective November 1, 2025, the United States Sentencing Commission also released a policy statement clarifying that courts considering requests for early termination should also, in addition to weighing the considerations under § 3583(e)(1), engage in an "individualized

assessment of the need for ongoing supervision . . . following consultation with the government and the probation officer." U.S.S.G. § 5D1.4(b).[2] The Commission also provided guidance on the same, indicating that courts "may wish to consider" factors relating to the defendant's patterns of behavior thus far on supervision, and his predicted behavior beyond the period of supervision. *See id.* at cmt. n.1(B).[3]

---

[2]   On November 1, 2025, the United States Sentencing Commission released the following policy statement regarding § 3583(e)(1):

> Any time after the expiration of one year of supervised release and after an individualized assessment of the need for ongoing supervision, the court may terminate the remaining term of supervision and discharge the defendant if the court determines, following consultation with the government and the probation officer, that the termination is warranted by the conduct of the defendant and in the interest of justice.

U.S.S.G. § 5D1.4(b). The discussion in this Opinion, *infra*, makes an individualized assessment of Del Buono's need for ongoing supervision. It was indicated to the Court that Probation takes no position on Del Buono's Motion for Early Termination. *See* Motion ¶ 13, ECF No. 312. The Government opposes the request. *See* Resp., ECF No. 314.

[3]   The Commission gave the following commentary regarding § 3583(e)(1):

> When determining whether to terminate the remaining term of supervised release under subsection (b), the court may wish to consider such factors as:
>> (i) any history of court-reported violations over the term of supervision;
>> (ii) the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);
>> (iii) the defendant's substantial compliance with all conditions of supervision;
>> (iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;
>> (v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and
>> (vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

Courts have before suggested that, "[g]enerally, early termination of supervised release under § 3583(e)(1) should occur only when the sentencing judge is satisfied that 'new or unforeseen circumstances' warrants it." *See United States v. Davies*, 746 F. App'x 86, 89 (3d Cir. 2018) (referencing *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)). However, the Third Circuit has made clear that this is not a firm rule or requirement. *See Melvin*, 978 F.3d at 53 (citing *Davies*, 746 F. App'x at 89). "In other words, extraordinary circumstances may be *sufficient* to justify early termination of a term of supervised release, but they are not *necessary* for such termination." *Id.* (citing *United States v. Murray*, 692 F.3d 273, 279 (3d Cir. 2012)). This is because, where a district court pronounces a sentence that is "sufficient, but not greater than necessary," *see* 18 U.S.C. § 3553(a), a defendant's motion for early termination of supervised release leads the court to ask whether "something [has] changed in the interim that would justify an early end to a term of supervised release," *see Melvin*, 978 F.3d at 53.

**IV.  Early termination of Del Buono's supervised release is not warranted.**

The Court has considered the relevant factors under 18 U.S.C. § 3553(a), and concludes that early termination of Del Buono's supervised release is not warranted. There is no presumption on district courts in favor of early termination, *see United States v. Fattah*, No. 21-3177, 2022 WL 2437846, at *2 (3d Cir. July 5, 2022), only statutory guidelines for how to determine whether early termination is "warranted by the defendant's conduct and is in the interest of justice," *see id.* (citing *Melvin*, 978 F.3d at 52).

---

*Id.* at cmt. n.1(B). As discussed in Section III, *infra*, Del Buono's behavioral improvements while on supervision thus far are promising, but the Court finds it too early to tell whether many of these factors—including "the ability of the defendant to lawfully self-manage," "the existence or lack of prosocial support to remain lawful beyond the period of supervision," and a "demonstrated reduction in risk level or maintenance of the lowest category of risk *over the period of* supervision"—warrant early termination.

Del Buono contends that he has demonstrated "exceptionally good behavior" that goes beyond "mere compliance" and reflects "profound personal change, accountability, and stable integration into the community." Reply at 2. He directs the Court's attention to his "zero positive drug tests, zero violations of home confinement stipulations, and zero-instances of non-reporting" thus far. *Id.* at 2-3. Del Buono also indicates that "he secured and maintained full-time employment with the same employer . . . since 2021, has paid his restitution, fines and court costs in full and has voluntarily participated in educational programs," *id.* at 3, and that he is no longer at risk of recidivating, *id.* at 4, so his continued supervision would only impose "unnecessary burdens without providing a commensurate benefit to public safety," *id.* at 3.

As for "the nature and circumstances of the offense and the history and characteristics of the defendant," *see* 18 U.S.C. § 3553(a)(1), Del Buono spent more than a decade of his life as a heroin dealer in Philadelphia. *See* Indictment. He managed to incur the charges leading to his current conviction and sentence while on supervised release following imprisonment for prior drug crimes. *See* ECF Nos. 117, 143, 145. At the time of sentencing, it was suggested that Del Buono lacked remorse and failed to understand the wrongdoing of his actions, necessitating serious rehabilitation and behavioral improvement.[4] The Court's order of mental health counseling and substance abuse treatment, as conditions of Del Buono's supervised release, were means of achieving this. The Court recognizes that Del Buono has so far been compliant and gone without a positive drug screen, but substance abuse and recidivism are not always solved in

---

[4] At the time of sentencing, the Government also asserted that Del Buono perpetuated a fraud on the Court, with the aid of his sister, who allegedly personally drafted several of Del Buono's character letters (which were purportedly from various community members), and created a MySpace website (designed to encourage the rehabilitation of urban boys and men who had gotten involved in the illegal drug trade) under the pretext that it was Del Buono's brain child. *See* ECF Nos. 143-45. The Government highlighted the irony of Del Buono's seeking to demonstrate his good character by engaging wholly in misrepresentations to the Court.

the first fifteen months of supervision. Ongoing supervision would only ensure his further compliance and successful reintegration into society.

As for the need to "afford adequate deterrence to criminal conduct," to "protect the public from further crimes of the defendant," and to "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," *see* 18 U.S.C. § 3553(a)(2)(B)-(D), Del Buono's history of deep involvement in the local drug trade and reliance on drug trafficking as a primary mode of income suggest that his continued supervision would only help him stay on the path of sobriety and lawful employment. The Court recognizes that Del Buono has maintained full-time employment since 2021. *See* Reply at 3. This was possible because of Del Buono's transfer to home confinement in 2020. *See* Motion at ¶ 4. His adjustment to life outside of prison and his ability to maintain stable employment are commendable, and may lessen the need for public "protection from further crimes of the defendant." 18 U.S.C. § 3583(e) (citing § 3553(a)(2)(C)); *see United States v. Albertson*, 645 F.3d 191, 197 (3d Cir. 2011) (suggesting that the primary purpose of supervised release is not to punish, but to "facilitate the integration of offenders back into the community") (quoting U.S. Sentencing Comm'n, *Federal Offenders Sentenced to Supervised Release* 8-9 (2010)). However, his supervisory period—which institutes a different set of compliance requirements than home confinement—began a little over a year ago. Thus, while Del Buono has been out of prison and working for some time, his 6-year term of supervised release is barely underway. His good behavior in this regard is encouraging, but not enough to warrant terminating the next four and a half years of supervision, especially when, by maintaining supervision, Del Buono can continue to receive the mental health counseling and substance abuse treatment that have shaped his success thus far.

As for sentencing guidelines and policy statements, *see* 18 U.S.C. § 3553(a)(4)-(5), Del Buono's imposed sentence was within the guideline range, *see* Judgment, even despite the Government's brief attempt to obtain an upward variance, *see* Motion for Upward Variance, ECF No. 145; Order of August 18, 2008, ECF No. 148 (deeming Motion for Upward Variance withdrawn). This sentence was "sufficient, but not greater than necessary" to comply with the purposes of sentencing outlined in 18 U.S.C. § 3553(a)(2).[5] *See* § 3553(a). The Court, at the time, considered "the need to avoid unwarranted sentence disparities," *see* 18 U.S.C. § 3553(a)(6), and found none present. Del Buono has not demonstrated any change of circumstances which would indicate that his supervised release term now creates such a disparity alongside similarly situated defendants. Lastly, Del Buono has met his financial obligations, but restitution was not ordered in this case and so a discussion of "the need to provide restitution to any victims of the offense" is inapplicable. *See* 18 U.S.C. § 3553(a)(7).

In short, Del Buono's period of supervised release began on October 16, 2024, and he has been under supervision for roughly fifteen months thus far, which is still well-within the early stages of his ordered term. *See Fattah*, 2022 WL 2437846, at *2 (finding that district court did not abuse its discretion in denying a motion for early termination of supervised release when it considered, among a "wide range of circumstances," the length of the remaining term). Due regard must be paid to the seriousness of Del Buono's heroin trafficking offenses, which spanned more than a decade, affected countless lives in Philadelphia, and culminated in Del Buono's

---

[5] These purposes are: "the need for the sentence imposed . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

arrest and conviction, leading to his current sentence. With the exception of the last few years, Del Buono exhibited a cycle of ongoing criminal activity, interrupted by periods of incarceration, which were immediately followed by new offenses. Del Buono's current term of supervised release is a crucial part of his sentence—one that was imposed as a result of his violating the terms of a prior supervised release period. "A violation of the terms of supervised release tends to confirm the judgment that help was necessary, and if any prisoner might profit from the decompression stage of supervised release, no prisoner needs it more than one who has already tried liberty and failed." *Johnson v. United States*, 529 U.S. 694, 709 (2000). The § 3553(a) factors lead to the conclusion that continued supervision is in Del Buono's best interest, and in the interest of justice. Early termination is not warranted.

## V.     Conclusion

After an individualized assessment, the above considerations ultimately lead the Court to deny Del Buono's request. He has not shown that it is in the interest of justice to terminate his supervised release at this time. *See* § 3583(e)(1). A separate order follows.

BY THE COURT:

/s/ *Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge